# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

NATIONAL RAILROAD PASSENGER )
CORPORATION, d/b/a/ AMTRAK, )
                       )
        Plaintiff, )
                       )     Case No.  10 C 3970
      v. )
                       )
THE PEOPLES GAS LIGHT AND COKE )
COMPANY et al., )
                       )
        Defendants. )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff National Railroad Passenger Corporation, d/b/a/ Amtrak ("Plaintiff" or "Amtrak") filed an eleven count Complaint for Declaratory, Injunctive and Other Relief against The Peoples Gas Light and Coke Company ("Peoples Gas"), the Illinois Department of Revenue ("Department") and its director, Brian Hamer ("Hamer"), Illinois Commerce Commission Chairman Manual Flores and Commissioners Lula M. Ford, Erin M. O'Connell-Diaz, Sherman J. Elliot and John T. Colgam (collectively, "ICC Commissioners"), the City of Chicago, and Bea Reyna-Hickey ("Reyna-Hickey"), the Director of the City of Chicago Department of Revenue (collectively, "Defendants").  Defendants have moved to dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## BACKGROUND

In 1971, Congress enacted the Rail Passenger Service Act, 49 U.S.C. § 24301 *et seq*., creating Amtrak.  Under the Rail Passenger Service Act, Amtrak is a private, for-profit rail carrier corporation that operates rail passenger services throughout the United States.   49 U.S.C.

§ 24301(a).  Although it is not a department, agency or instrumentality of the United States government, *see id*., the Act grants Amtrak a federal tax exemption from state and local taxes, fees and charges.  49 U.S.C. § 24301(l) ("Federal Exemption Statute").  The Federal Exemption Statute provides:

> Exemption From Taxes Levied After September 30, 1981.
>
> (1) In general. Amtrak, a rail carrier subsidiary of Amtrak, and any passenger or other customer of Amtrak or such subsidiary, are exempt from a tax, fee, head charge, or other charge, imposed or levied by a State, political subdivision, or local taxing authority on Amtrak, a rail carrier subsidiary of Amtrak, or on persons traveling in intercity rail passenger transportation or on mail or express transportation provided by Amtrak or such a subsidiary, or on the carriage of such persons, mail, or express, or on the sale of any such transportation, or on the gross receipts derived therefrom after September 30, 1981. In the case of a tax or fee that Amtrak was required to pay as of September 10, 1982, Amtrak is not exempt from such tax or fee if it was assessed before April 1, 1997.
>
> (2) The district courts of the United States have original jurisdiction over a civil action Amtrak brings to enforce this subsection and may grant equitable or declaratory relief requested by Amtrak.

In Illinois, Amtrak purchases services from Peoples Gas related to the delivery of natural gas, and Amtrak pays a price for those services.  Amtrak alleges that among the costs Peoples Gas charges its customers are certain taxes and charges from which Amtrak claims it is exempt under the Federal Exemption Statute.  Amtrak brings the present action to declare and enforce its rights under the Federal Exemption Statute with regard to those taxes and charges. Because the Federal Exemption Statute prohibits the imposition of taxes, fees, and charges "imposed or levied by a State, political subdivision, or local taxing authority on Amtrak," a review of each Defendant's status, and of the precise taxes and charges at issue in this case, is necessary.

## I.    Defendants

### A.    Peoples Gas

Peoples Gas is a regulated Illinois public utility, principally engaged in the distribution, supply, furnishing, sale, transportation and delivery of natural gas to Illinois consumers. (R. 1, Compl. ¶ 3.) Amtrak purchases deliveries of natural gas from Peoples Gas for use in its interstate rail carriage business. (*Id*. at ¶ 19.)

### B.    State Defendants

#### 1.    Illinois Department of Revenue & Director Hamer

The Illinois Department of Revenue is an agency of the State of Illinois Executive Department. (*Id*. at ¶ 5.) The Department administers Illinois revenue laws, including the Gas Use Tax Law, 35 ILCS 175/5-1 *et seq*., and the Gas Revenue Tax Act, 35 ILCS 615/1 *et seq*. (*Id*. at ¶ 4.) Defendant Hamer is the current Director of the Illinois Department of Revenue. Hamer oversees the Department, and is charged with administering and enforcing many of the revenue laws of the State of Illinois. (*Id*. at ¶ 6.)

#### 2.    Illinois Commerce Commission and the Commissioners

The Illinois Commerce Commission ("ICC") administers the Illinois Public Utilities Act. (*Id*. at ¶ 7.) The ICC is charged with assessing the Public Utility Fund Tax, which is imposed on Illinois public utilities pursuant to 220 ILCS 5/2-202. Public utilities may recoup their Public Utility Fund Tax expenditures from their customers in accordance with 220 ILCS 5/9-222. The Defendant Commissioners oversee the ICC and administer and enforce the Public Utilities Act. (*Id*. at ¶ 8.)

### C.     City Defendants

Defendant City of Chicago ("City") is a municipal corporation.  (*Id*. at ¶ 9.)  Pursuant to the Municipal Code of Chicago § 3-40-040, the City collects a tax imposed on all persons engaged in the business of distributing, supplying, furnishing or selling gas for use or consumption within the corporate limits of Chicago.  (*Id*.)  Defendant Bea Reyna-Hickey ("Reyna-Hickey") is the current Director of the City of Chicago Department of Revenue.  (*Id*. at ¶ 10.)  In that capacity, Reyna-Hickey oversees the City Department of Revenue, and is charged with the duty of administering and enforcing many of the City's revenue laws.  (*Id*.)

## II.     Taxes, Fees & Charges At Issue In This Lawsuit

### A.     Illinois Gas Use Tax

The Illinois gas use tax is a state tax imposed on gas purchasers.[1]  The Illinois Gas Use Tax Law, 35 ILCS 173/5-1 *et seq.*, provides that, as of October 1, 2003, purchasers in the State of Illinois that obtain gas from out-of-state for use in Illinois must pay a state "gas use" tax.  35 ILCS 173/5-10.  The tax imposed is the lesser of 2.4 cents per therm or five percent (5%) of the purchase price for the billing period.  *Id*.  Purchasers can opt to pay the gas use tax in one of two ways: (1) by registering with the Illinois Department of Revenue as a "self-assessing purchaser" and, in so doing, paying the gas use tax directly to the Department at the self-assessing purchaser rate, *see* 35 ILCS 173/5-20; or (2) by electing to pay the "alternate tax rate" of 2.4 cents per therm to a delivering supplier, who shall then owe the Department a debt in the amount of the tax collected, *see* 35 ILCS 173/5-15.  The delivering supplier "shall collect [the gas use tax] from the

---

[1]  As the Court will discuss below, the fact that the gas use tax is imposed on gas *purchasers* is relevant to the disposition of Plaintiff's claims.  It also distinguishes the gas use tax from the other taxes and charges at issue in this case.

purchasers who have elected the alternate tax rate" until it receives either a copy of the purchaser's certificate of registration as a self-assessing purchaser, *see id*., or a certificate of exemption stating that the customer is exempt from the gas use tax, *see* 96 Ill. Admin. Code § 471.125(b).  Receipt of either certificate "relieve[s the delivering supplier] of the duty to collect the alternate tax."  35 ILCS 173/5-15.  Pursuant to the Gas Use Tax Law, the gas use tax shall not be imposed on "[a]ny purchase by a purchaser if the supplier is prohibited by federal or State constitution, treaty, convention, statute, or court decision from recovering the related tax liability from such purchaser."  35 ILCS 173/5-5.

### B.    Illinois Gas Revenue Tax

The Illinois gas revenue tax is a state tax imposed on gas distributers, suppliers, and sellers.  Pursuant to the Gas Revenue Tax Act, 35 ILCS 615/1 *et seq*., "[a] tax is imposed upon persons engaged in the business of distributing, supplying, or furnishing or reselling gas . . . at the rate of 2.4 cents per therm . . . or 5% of the gross receipts received from each customer from such business, whichever is the lower rate."  35 ILCS 615/2.  The statute provides that "gross receipts" shall not include receipts from "any sale to a customer if the taxpayer [i.e., the utility] is prohibited by federal or State constitution, treaty, convention, statute or court decision from recovering the related tax liability from such customer."  35 ILCS 615/1(viii).

### C.    Illinois Public Utility Fund Tax

The Illinois Public Utilities Act, 220 ILCS 5/2-100 *et seq*., imposes a tax on public utilities in Illinois in the form of a tax on their gross revenue, for the purpose of "maintain[ing] and foster[ing] the effective regulation of public utilities."  220 ILCS 5/2-202(a).

### D. City of Chicago Municipal Tax

The City of Chicago imposes a tax on "all persons engaged in the business of distributing, supplying, furnishing or selling gas for use or consumption within the corporate limits of the city" at a rate of eight percent (8%) of gross receipts from the company's business. City of Chicago Municipal Code § 3-40-040.

### III. Public Utilities Act "Pass-Thru"

The Public Utilities Act, 220 ILCS 5/9-222, provides as follows:

> Whenever a tax is imposed upon a public utility engaged in the business of distributing, supplying, furnishing, or selling gas for use or consumption pursuant to Section 2 of the Gas Revenue Tax Act, . . . or whenever a tax is imposed upon a public utility pursuant to Section 2-202 of this Act, such utility may charge its customers, . . . an additional charge equal to the total amount of such taxes. . . . Such utility shall file with the Commission a supplemental schedule which shall specify such additional charge and which shall become effective upon filing without further notice. Such additional charge shall be shown separately on the utility bill to each customer.

The Public Utilities Act also provides that whenever a municipality imposes a tax on a public utility, the public utility "may charge its customers . . . an additional charge equal to the sum of [] an amount equal to such municipal tax," plus accounting costs and taxes the utility incurs as a result of the additional charge. 220 ILCS 5/9-221.

## FACTUAL ALLEGATIONS

Amtrak alleges that Defendants have imposed taxes and charges on it in violation of the Federal Exemption Statute. Specifically, Amtrak alleges the following facts, which are relevant to the Court's analysis below.

### I. Illinois Gas Use Tax

Amtrak alleges that Peoples Gas unlawfully began charging Amtrak the gas use tax, and collecting the gas use tax from Amtrak, on the Gas Use Tax Law's effective date of October 1,

2003.  (Compl. ¶ 27.)  Peoples Gas collected the gas use tax by adding a charge for "State Gas Use Tax" on Amtrak's gas bills under a general "Taxes" heading.  (*Id*. at ¶ 28.)

Amtrak states that it notified Peoples Gas in writing on January 12, 2005 that it was exempt from all State and City of Chicago taxes on gas, including the gas use tax.  (*Id*. at ¶ 31.) Peoples Gas responded by letter dated March 9, 2005, stating that Amtrak was not exempt from State and City taxes on gas, including the gas use tax.  Peoples Gas further provided it would not stop collecting the gas use tax from Amtrak until Amtrak provided a Form RG-61 Gas Use Tax Exemption Certificate that included an "E number" issued by the Illinois Department of Revenue.  (*Id*. at ¶ 33.)  Although Amtrak provided Peoples Gas with a general information letter from the Department of Revenue on April 19, 2006, which stated, in relevant part, that the provisions of the Federal Exemption Statute "clearly exempt Amtrak . . . from taxes imposed and levied upon it by a State," Peoples Gas continued to demand an E number and an executed Form RG-61 from Amtrak before it would cease imposing and collecting the gas use tsax.  (*Id*. at ¶ 34.)  Amtrak provided the Department's April 19, 2006 general information letter to Peoples Gas on at least three occasions, the latest of which was July 10, 2007.  (*Id*. at ¶ 35.)

Meanwhile, Amtrak received an E number sometime prior to November 24, 2007, which the Department rescinded on November 24, 2007, allegedly because the Department determined that Amtrak was "not an exempt government body under Illinois law."  (*Id*. at ¶ 37.)  Because Peoples Gas stated that it would continue to collect the gas use tax until Amtrak provided it with an executed Form RG-61 and a valid E number, Amtrak re-applied for an E number.  (*Id*. at ¶¶ 38-39.)  The Department granted Amtrak an E number on or about October 10, 2008, *id*. at ¶ 40, which Amtrak provided to Peoples Gas, with an executed Form RG-61, on or about October 21,

2008. (*Id.* at ¶ 42.) Peoples Gas stopped collecting the Gas Use Tax from Amtrak after receiving the Form RG-61 and E number. (*Id.*) In total, between October 1, 2003 and October 21, 2008, Amtrak paid Peoples Gas in excess of $400,000 for the gas use tax. (*Id.* at ¶ 29.)

Under Illinois law, to claim a refund of gas use taxes paid to the Department, the public utility which collected the tax from the gas purchaser – not the gas purchaser itself – may file a claim. (*Id.* at ¶ 43.) On December 30, 2009, Peoples Gas filed a claim with the Department for a refund of the gas use tax it had collected from Amtrak between July 1, 2006 and October 21, 2008. (*Id.* at ¶ 44.) Although Peoples Gas had collected $165,727.58 from Amtrak during that time period, Peoples Gas sought a refund of $118,541.57. (*Id.* at ¶ 45.) Peoples Gas effectively refunded itself the difference between the two sums – $47,186.01 – alleging it was the amount Peoples Gas would have charged Amtrak for the gas revenue tax between July 1, 2006 and October 21, 2008 had it not been improperly collecting the gas use tax. (*Id.*) Peoples Gas refunded Amtrak a sum total of $128,199.93 for the gas use tax, reflecting the "offset" refund amount plus interest. (*Id.* at ¶ 46.) Amtrak alleges that Peoples Gas has refused to refund, or file refund claims with the Department, for the gas use taxes it collected from Amtrak prior to July 1, 2006. (*Id.* at ¶ 47.)

## II.    Illinois Gas Revenue Tax

Amtrak alleges that Peoples Gas imposes an additional charge on its customers' gas bills in an amount equal to the gas revenue tax that Illinois law requires Peoples Gas to pay to the Department. (*Id.* at ¶ 52.) Peoples Gas calls this charge a "State Gas Revenue Tax" under a "Taxes" heading on Amtrak's gas bills. (*Id.* at ¶ 53.) Prior to October 1, 2003, Peoples Gas charged Amtrak the so-called "State Gas Revenue Tax" on its gas bills, as follows: from May

1997 to May 2000, Peoples Gas charged Amtrak a sum total of $36,117.22, and from May 2000

until October 1, 2003, Peoples Gas charged Amtrak an average of $1,000 per month.  (*Id*. at ¶¶

55-56.)  From October 1, 2003 to October 21, 2008, Peoples Gas did not charge Amtrak the

"State Gas Revenue Tax" because it was collecting the gas use tax from Amtrak.  (*Id*. at ¶ 57.)

Peoples Gas has allegedly informed Amtrak that Amtrak is subject to the "State Gas Revenue

Tax" and that Peoples Gas will continue to charge Amtrak the "State Gas Revenue Tax."  (*Id*. at

¶ 58.)

### III.  Illinois Public Utility Fund Tax

Amtrak alleges that Peoples Gas has charged Amtrak a sum total of $947.34 since June

12, 2006 as a "State Tax" under a "Taxes" heading on Amtrak's gas bills.  (*Id*. at ¶¶ 64-65.)

That sum reflects the cost imposed on Peoples Gas under the Public Utility Fund Tax during that

time period.  (*Id*. at ¶¶ 61-63.)

### IV.  Chicago Municipal Tax

Amtrak alleges that Peoples Gas also has charged Amtrak a sum total of $78,058.13 as a

"Chicago Municipal Tax" under a "Taxes" heading on Amtrak's gas bills.  (*Id*. at ¶¶ 68-69.)

Amtrak states that it has asked Peoples Gas to stop charging and collecting the "Chicago

Municipal Tax," and has requested that Peoples Gas refund such amounts as have been collected.

(*Id*. at ¶ 70.)  Peoples Gas has allegedly rejected Amtrak's request.  (*Id*.)

### LEGAL STANDARD

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a

claim upon which relief may be granted."  *Hallinan v. Fraternal Order of Police of Chicago

Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009).  Pursuant to Rule 8(a)(2), a complaint must

include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). As the Seventh Circuit explains, this "[r]ule reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross,* 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). The short and plain statement under Rule 8(a)(2) must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). Under the federal notice pleading standards, a plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. – , 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Twombly,* 550 U.S. at 570); *see also Limestone Dev. Corp. v. Village of Lemont, Ill.*, 520 F.3d 797, 803 (7th Cir. 2008) (amount of factual allegations required to state a plausible claim for relief depends on complexity of legal theory). "[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L.Ed.2d 1081 (2007); *McGowan v. Hulick,* 612 F.3d 636, 638 (7th Cir. 2010) (courts accept factual allegations as true and draw all reasonable inferences in plaintiff's favor).

## ANALYSIS

Peoples Gas, the State Defendants, and the City Defendants have each filed motions to dismiss Amtrak's complaint pursuant to Rule 12(b)(6). All of the Defendants have moved to

dismiss Counts I and II, in which Amtrak seeks declaratory judgment and permanent injunctive relief. Defendants also ask the Court to dismiss the remaining nine counts brought against them individually. The Court addresses Defendants' arguments in turn.

## I.     Counts I & II – Declaratory Judgment & Injunctive Relief Under 49 U.S.C. § 24301(l) (Against All Defendants)

In Counts I and II of its Complaint, which Amtrak brings against all Defendants, Amtrak alleges that Defendants are violating the Federal Exemption Statute in "charging Amtrak for and collecting the [Gas Use Tax, State Gas Revenue Tax, Public Utility Fund Tax and Chicago Municipal Tax] from Amtrak." (Compl. ¶ 75.) Although Amtrak aggregates the State Gas Revenue Tax, Public Utility Fund Tax and Chicago Municipal Tax with the Illinois Gas Use Tax and names them, collectively, "Taxes," that characterization is a misnomer. The Illinois Gas Use Tax is, as set forth in its authorizing statute, a state tax directly imposed on consumers. The other so-called "Taxes" are, in fact, "additional charges" that Peoples Gas imposes on and collects from Amtrak pursuant to the "pass-through" provisions in Sections 5/9-221 and 5/9-222 of the Public Utilities Act. Amtrak concedes as much. (R. 40, Pl.'s Resp. in Opposition to Mot. to Dismiss, at 7.) For purposes of this opinion, then, the Court will refer to those charges that Peoples Gas imposes on Amtrak as "Additional Charges."

In Count I, Amtrak asks the Court to declare that it is not liable for, and cannot be required to pay, the gas use tax and the Additional Charges. (*Id*. at ¶ 76.) In Count II, Amtrak asks the Court to permanently enjoin Defendants from charging Amtrak for the gas use tax and the Additional Charges, and from collecting them from Amtrak. (*Id*. at ¶ 80.) Defendants move to dismiss Counts I and II on two grounds. First, Defendants argue that Amtrak's claims regarding the gas use tax are moot because, by Amtrak's own admission, the Department is no

11

longer levying that tax on Amtrak and has not been since October 2008. Second, Defendants submit that Amtrak's claims regarding the Additional Charges fail as a matter of law because the Federal Exemption does not apply to them.

### A. Amtrak fails to state a claim for declaratory and injunctive relief regarding the gas use tax[2]

Under Article III, § 2 of the United States Constitution, federal court jurisdiction is limited to "actual, ongoing controversies." *St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 626 (7th Cir. 2007) (citing *Honig v. Doe*, 484 U.S. 305, 317, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988)). "[W]hen the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," the claims are moot and must be dismissed for lack of jurisdiction. *Id.* (citing *Powell v. McCormack*, 493 U.S. 486, 496, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969)); *see also Gates v. City of Chicago*, 623 F.3d 389, 413 (7th Cir. 2010). In order to satisfy Article III's justiciability requirements, "[t]he injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *O'Shea v. Littleton*, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). "The correct standard for mootness [is] that no reasonable expectation exists that the alleged wrong will be repeated." *Lucini Italia Comp. v. Grappolini*, 288 F.3d 1035, 1038 (7th Cir. 2002) (citing *Wilk v. American Medical Ass'n*, 895 F.2d 352, 367 (7th Cir. 1990)). "The burden of persuasion that such conduct cannot reasonably be expected to reoccur lies with the defendant." *Id.* (citing *Wilk*, 895 F.2d at 367).

"It is well settled that a defendant's voluntary cessation of a challenged practice does not

---

[2] Because Amtrak does not plead any factual allegations regarding the City Defendants' involvement with or relationship to the gas use tax, and none of Amtrak's allegations suggest there is any relationship between the City Defendants and the gas use tax, the Court dismisses Counts I and II with prejudice as to the City Defendants.

deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Nevertheless, the Court notes the following relevant factors. First, the State Defendants no longer impose the gas use tax on Amtrak. Second, the State Defendants have issued a letter ruling stating that Amtrak is exempt from the gas use tax in accordance with the Federal Exemption Statute. Third, the State Defendants affirmatively reiterate in their briefs that "§ 24301(l) plainly exempts Amtrak from the [gas use tax]." (R. 45, State Defs.' Reply, at 4-5.) Finally, the State Defendants' cessation of the gas use tax levy on Amtrak significantly predated the filing of Amtrak's lawsuit, suggesting that it was not simply a tactic undertaken to preempt, or moot, litigation. *Commodity Futures Trading Comm'n v. Bd. of Trade of City of Chicago*, 701 F.2d 653, 656 (7th Cir. 1983). For all these reasons, there is no reasonable expectation that the gas use tax will be imposed upon or collected from Amtrak. *See In re Associated Press*, 162 F.3d 503, 511 (7th Cir. 1998) (requiring a "reasonable expectation that the same complaining party would be subjected to the same action again"). In light of this finding, and given that the issues presented are no longer 'live,' Amtrak's claims for declaratory and injunctive relief as to the gas use tax are moot and the Court grants Defendants' motions to dismiss Counts I and II with respect to the gas use tax.

    **B.**    **Counts I & II fail to state a claim for declaratory or injunctive relief with respect to the Additional Charges**

Defendants seek dismissal of Counts I and II as they relate to Peoples Gas's imposition and collection of the Additional Charges on the grounds that the Additional Charges are not "taxe[es], fee[s], ... or other charge[s] imposed or levied by a State, political subdivision or local taxing authority on Amtrak." 49 U.S.C. § 24301(l). Defendants argue that the Federal

13

Exemption Statute does not apply to those Additional Charges and that Amtrak's claims thus fail as a matter of law. Amtrak refutes Defendants' contentions and argues that those Additional Charges are among the "charges" prohibited by the Federal Exemption Statute. Alternatively, Amtrak argues that it has standing under the Federal Exemption Statute to challenge the taxes imposed on Peoples Gas.

        **1.**     **The Additional Charges are not "charges" for purposes of the Federal Exemption Statute**

The Federal Exemption Statute reads, in relevant part: "Amtrak, a rail carrier subsidiary of Amtrak, and any passenger or other customer of Amtrak or such subsidiary, are exempt from a tax, fee, head charge, or other charge, imposed or levied by a State, political subdivision, or local taxing authority on Amtrak." 49 U.S.C. § 24301(l). Amtrak contends that the Additional Charges constitute prohibited "charges" under that statute. Defendants argue that Amtrak's claims fail as a matter of law because the plain language of the statute does not apply to the Additional Charges. The Court agrees with Defendants.

"Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." *Turley v. Gaetz*, 625 F.3d 1005, 1008 (7th Cir. 2010) (quoting *Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 83 L.Ed.2d 582 (1985)). The Court gives the words of a statute their "ordinary meaning unless the context counsels otherwise." *Ortega v. Holder*, 592 F.3d 738, 743 (7th Cir. 2010) (quotation omitted). It is a "cardinal principal of statutory construction" that a court must "give effect, if possible, to every clause and word of a statute." *Duncan v. Walker*, 533 U.S. 167, 174, 121 S.Ct. 2120, 150 L.Ed.2d 251 (2001) (internal citations omitted). "Legislative history comes into play only when necessary to

14

decode an ambiguous enactment; it is not a sine qua non for enforcing a straightforward text."

*DirecTV, Inc. v. Barczewski*, 604 F.3d 1004 (7th Cir. 2010). If the plain wording of the statute is clear, the Court need not look further than the statute to discern its meaning. *Holder*, 595 F.3d at 743 (citation omitted).

A plain language reading of 49 U.S.C. § 24301(l) compels the interpretation that Amtrak is only exempt from taxes, fees, or charges (i) levied by a State or local taxing authority (ii) on Amtrak. None of the parties contest that clear and unambiguous reading. As Amtrak alleges in its Complaint, the Illinois Department of Revenue levies the Gas Revenue Tax and the Public Utility Fund Tax on Peoples Gas. (Compl., ¶¶ 49-52, 61-64, 88.) Amtrak also alleges that the City of Chicago levies the Municipal Tax on Peoples Gas. (Compl., ¶¶ 66-68, 88.) Amtrak does not make any factual allegations in its Complaint that would support an argument that the Department or the City levies those taxes on Amtrak. Nor does Amtrak allege (or argue) that Peoples Gas is a "State, political subdivision, or local taxing authority." Thus, based on Amtrak's factual allegations and a plain language reading of the statute, the Additional Charges at issue here do not fall under the exempt "taxes, fees and charges" described in the statute and Amtrak's claims must fail with respect to the Additional Charges.

In its response brief, Amtrak argues that the Federal Exemption statute applies to the Additional Charges because they are charges "imposed on Amtrak by state law, specifically, Sections 5/9-221 and 5/9-222 of the Public Utilities Act." (R. 40, Pl.'s Resp. in Opposition to Mot. to Dismiss, at 8-9.) Amtrak also alleges that they are "imposed on Amtrak by state statute and order of the [Illinois Commerce Commission]." (*Id*. at 9.) Nowhere in its Complaint, however, does Amtrak even come close to making such factual allegations. Amtrak states that

the Illinois Public Utilities Act "provides that Peoples Gas *may* recover from its customers 'an additional charge equal to the total amount of such taxes' imposed on Peoples Gas" pursuant to the Gas Revenue Tax Act and the Public Utilities Act. (Compl. ¶¶ 51, 63 (emphasis added).) Amtrak also states that "[t]he Illinois Public Utilities Act provides for Peoples Gas to recover from its customers" an Additional Charge relating to the City of Chicago Municipal Tax. (*Id.* at ¶ 67.) Furthermore, all of Amtrak's claims regarding the Additional Charges implicate Peoples Gas as the actor: "Peoples Gas charged Amtrak" Additional Charges relating to the Gas Revenue Tax, *id.* at ¶ 55; "Peoples Gas has continued to charge and collect" Additional Charges relating to the Gas Revenue Tax, *id.* at ¶ 59; "Peoples Gas has charged Amtrak" Additional Charges relating to the Public Utility Fund Tax, *id.* at ¶ 65; "People's Gas has charged Amtrak" Additional Charges relating to the City of Chicago Municipal Tax, *id.* at ¶ 69. The only factual allegation that could possibly suggest another party's potential responsibility for imposing the Additional Charges states, "The Department knew of Amtrak's Federal Tax Exemption but allowed Peoples Gas to collect State Gas Revenue Tax from Amtrak." *Id.* at ¶ 60. Amtrak does not make any factual allegations regarding the Department's relationship with, or authority over, Peoples Gas. Defendants' motions to dismiss Counts I and II for failure to state a claim under Rule 12(b)(6) with respect to the Additional Charges prevail.[3]

Even if Amtrak had alleged in its Complaint that Sections 5/9-221 and 5/9-222 of the

---

[3] The City Defendants argue that even if the Court were to accept Amtrak's argument that the State Defendants, via the Public Utilities Act §§ 5/9-221 and 5/9-222, impose the Additional Charges on Amtrak, nowhere in that argument does Amtrak allege that the City Defendants play any role in that imposition. The Court agrees. Amtrak does not make that argument in its response brief, and does not plead any such allegations in its Complaint. The Court accordingly dismisses Counts I and II against the City Defendants with prejudice on this additional ground.

Public Utilities Act impose the Additional Charges on Amtrak in violation of the Federal Exemption Statute, its claims would still fail as a matter of law.  Section 5/9-222 provides that "[w]henever a tax is imposed upon a public utility engaged in the business of distributing, supplying, furnishing, or selling gas for use or consumption pursuant to Section 2 of the Gas Revenue Tax Act, . . . or whenever a tax is imposed upon a public utility pursuant to Section 2-202 of this Act, such utility *may* charge its customers, . . . an additional charge equal to the total amount of such taxes."[4]  The statute clearly permits a public utility to impose an additional charge on its customers, and no reading of the statute would permit the Court to conclude that the statute *requires* the utility to impose such a charge, or that the statute itself directly imposes the charge on Amtrak.  Peoples Gas retains full discretion in deciding whether and to what extent to recover the costs from its customers.  Although, as Amtrak argues in its response brief, the statute requires Peoples Gas to file a supplemental schedule with the ICC that specifies the Additional Charges, it explicitly states that the schedule "shall become effective upon filing without further notice."  220 ILCS 5/9-222.  The statute grants the ICC no authority to involve itself in these dealings other than to investigate whether charges on the utility's supplemental schedule match the tax liabilities Peoples Gas incurred, and to order a refund if the charges exceeds the liabilities.  Therefore, nothing in the plain language of the statute would support Amtrak's claim, had it pleaded one, that the State of Illinois – "by state statute and order of the ICC" – imposed such Additional Charges on Amtrak.

---

[4]  Similarly, under Section 5/9-221, whenever a municipality imposes a tax on a public utility, the public utility "*may* charge its customers . . . an additional charge equal to the sum of (1) an amount equal to such municipal tax," plus accounting costs and taxes the utility incurs as a result of the additional charge.  220 ILCS 5/9-221.

Finally, as a matter of law, the United States Supreme Court has repeatedly held that where a state statute permits but does not require a taxpayer to pass on a tax to a customer, the legal incidence of the tax is on the taxpayer, and a United States government purchaser is not exempt from paying a charge equal to the amount of the tax. *See United States v. Tax Comm'n of Mississippi*, 421 U.S. 599, 610 n. 9, 95 S.Ct. 1872, 44 L.Ed.2d 404 (1975) (citing *Gurley v. Rhoden*, 421 U.S. 200, 95 S.Ct. 1605, 44 L.Ed.2d 110 (1975) for its holding that the legal incidence of federal and state excise taxes on gasoline was on the producer-distributor of the gasoline who was not required to pass on the amount of the tax to his purchasers); *Alabama v. King & Boozer*, 314 U.S. 1, 8-9, 62 S.Ct. 43, 86 L.Ed. 3 (1941) ("So far as such a nondiscriminatory state tax upon the contractor enters into the cost of the materials to the Government, that is but a normal incident of the organization within the same territory of two independent taxing sovereignties. The asserted right of the one to be free of taxation by the other does not spell immunity from paying the added costs, attributable to the taxation of those who furnish supplies to the Government and who have been granted no tax immunity.").  The Seventh Circuit and Illinois courts have also held that the legal incidence of a nondiscriminatory tax imposed on a public utility which is authorized - but not required - to "pass on" the economic burden of the tax falls on the public utility. *See Agron v. Illinois Bell Telephone Co.*, 449 F.2d 906, 909 (7th Cir. 1971) ("It may be that IBT normally 'passes on' to its subscribers the economic burden of the state and local occupation taxes ... [b]ut the fact that the telephone subscriber ultimately bears the financial burden of the tax does not justify our ignoring the clear language of the Illinois statutes and holding that the tax is 'imposed' on subscribers."); *Waukegan Cmty. Unit Sch. Dist. v. City of Waukegan*, 95 Ill.2d 244, 256-57, 447 N.E.2d 345 (Ill.

App. Ct. 1983); *Commonwealth Edison Co. v. Cmty. Unit Sch. Dist. No. 200*, 44 Ill.App.3d 665, 670-71, 358 N.E.2d 688 (Ill. App. Ct. 1977). Sections 9-222 and 9-221 of the Public Utilities Act provide that the utility "may" charge its customers the Additional Charges. Accordingly, as Defendants argue, the legal incidence of the Gas Revenue Tax, the Public Utility Fund Tax, and the Chicago Municipal Tax all fall on Peoples Gas. Amtrak has no claim under the Federal Exemption Statute, and Counts I and II are accordingly dismissed with prejudice as to the Additional Charges.

       **2.**     **Amtrak's argument that it has standing to sue to challenge the taxes behind the Additional Charges does not prevail**

Arguing in the alternative, Amtrak contends that it has standing under the Federal Exemption Statute to challenge the taxes imposed on Peoples Gas. Amtrak supports this argument by citing to an Illinois Supreme Court decision, *Getto v. City of Chicago*, which held that a customer who had fully borne the economic burden of a tax could sue to challenge that tax. 77 Ill. 2d 346, 355-56, 396 N.E.2d 544 (Ill. 1979). Amtrak has not, however, raised that issue in its Complaint. Nowhere has Amtrak indicated that it wishes to sue the State and City Defendants to challenge the general validity of the taxes they impose on Peoples Gas. Amtrak's Complaint only challenges the application of these taxes to itself, specifically, and whether the taxes violate Amtrak's federal exemption.

## II.    **Count III – Unjust Enrichment (Against Peoples Gas)**

In Count III, Amtrak alleges that Peoples Gas violated the Federal Exemption Statute in collecting the gas use tax and Additional Charges from Amtrak. Amtrak claims that Peoples Gas has been "unjustly enriched by its unlawful actions in using Amtrak's money to pay its State of Illinois and City of Chicago Taxes." (Compl. ¶ 88.) Amtrak asks the Court to order Peoples Gas

to refund all sums it collected from Amtrak, including interest thereon.

As an initial matter, the Court notes that its finding that the Additional Charges that Peoples Gas imposed on Amtrak did not violate the Federal Exemption Statute leaves Amtrak no grounds on which to claim title to those funds. Accordingly, Count III fails as a matter of law as to the payments Amtrak made to Peoples Gas for the Additional Charges. Having so ruled, the Court will address Defendant's arguments with respect to the gas use tax.

"To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 131 Ill.2d 145, 137 Ill.Dec. 19, 545 N.E.2d 672, 679 (Ill. 1989). Here, Amtrak claims that Peoples Gas unjustly retained money that it was not authorized to collect from Amtrak, and that Amtrak is entitled to those unjustly retained sums – specifically, the more than $400,000 that Peoples Gas collected as a gas use tax from Amtrak. As Amtrak concedes in its response brief, its factual allegations paint a slightly different picture of its claim. Amtrak states that, upon information and belief, Peoples Gas remitted those sums to the Illinois Department of Revenue, less a statutorily authorized collection fee. (Compl. ¶ 82.) Thus, to the extent Amtrak may recover anything from Peoples Gas under a theory of unjust enrichment, the only "enrichment" Amtrak alleges is the collection fee Peoples Gas keeps for its services.

Fundamentally, however, Amtrak does not sufficiently allege the legal basis for its claim. Amtrak argues that Peoples Gas "mischaracterizes [ ] Count III ... as being premised solely on unjust enrichment." (R. 40, Pl.'s Resp. in Opp. to Mot. to Dismiss, at 14.) Amtrak refutes

Peoples Gas's "limited" interpretation of Count III and argues that "Amtrak seeks repayment of what it has paid because those amounts were unlawfully collected from it by Peoples Gas in violation of federal law. ... Amtrak can thus recover those amounts without consideration of principles of unjust enrichment." (*Id.*) Amtrak then cites a single case involving a state's unconstitutional imposition of a tax on an "immune" taxpayer which invoked the Fourteenth Amendment, presumably as an alternate ground on which it might base its claim for repayment. Without commenting on the applicability of that case law to the present lawsuit, at this stage in the proceedings, Amtrak must plead enough to put Peoples Gas on notice as to what its claim entails. For the purposes of a Rule 12(b)(6) motion, the Court must consider whether Amtrak "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (internal quotation omitted). Here, Amtrak asserts that the claim may be one for unjust enrichment, and may be one rooted in the Fourteenth Amendment. This does not put Peoples Gas on notice of the grounds on which the claim rests. The Court therefore grants Defendant's motion without prejudice as to Count III as it relates to the gas use tax, and with prejudice as it relates to the Additional Charges.

### III.    Counts IV & V -- Repayment of Taxes Paid (Against State Defendant Hamer & the ICC Commissioners)

In Count IV, Amtrak seeks repayment of the sums it paid Peoples Gas for the gas use tax and the State Gas Revenue Tax. Amtrak alleges that "[b]y receiving and retaining such Taxes, Hamer has violated federal law." (Compl. ¶ 93.) In Count V, Amtrak seeks repayment of the sums it paid Peoples Gas for the Public Utility Fund Tax, alleging that in receiving and retaining that "Tax," the ICC Commissioners "have acted in direct violation of federal law." (*Id.* at ¶ 100.) Because the Court has already found that the State Gas Revenue Tax and the Public Utility

Fund Tax are not exempted under the Federal Exemption Statute, the State Defendants' motion to dismiss Count V is granted with prejudice, and their motion to dismiss Count IV is granted with prejudice as to the State Gas Revenue Tax. The Court now considers Count IV as to the gas use tax.

The Eleventh Amendment bars federal jurisdiction over suits brought against unconsenting states by citizens of other states as well as by its own citizens. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-99, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Edelman v. Jordan*, 415 U.S. 651, 663-64, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The Seventh Circuit has held that Eleventh Amendment issues "may arise whenever a private party files a federal lawsuit against a state, a state agency, or a state official." *Kroll v. Bd. of Trustees of Univ. of Illinois*, 934 F.2d 904, 907 (7th Cir. 1991). Eleventh Amendment immunity applies to state agencies the same way it applies to states. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993); *MCI Telecomm. Corp. v. Illinois Bell Tel. Co.*, 222 F.3d 323, 336 (7th Cir. 2000). Under the Eleventh Amendment, federal courts are prohibited from entertaining lawsuits by private parties against states and their agencies unless the state unequivocally waives its Eleventh Amendment protections or Congress abrogates the state's Eleventh Amendment immunity. *See Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001); *Peirick v. IUPUI Athletics Dept.*, 510 F.3d 681, 695 (7th Cir. 2007). The Seventh Circuit has long recognized that the ICC is a state agency. *Johnson v. Illinois Commerce Comm'n*, 176 Fed.Appx. 662, 662 (7th Cir. 2006) (citing *MCI Telecomm. Corp.*, 222 F.3d at 336-344; *Illinois Bell Tel. Co. v. WorldCom Tech., Inc.*, 157 F.3d

500, 501 (7th Cir. 1998); *Fuchs v. Rural Elec. Convenience Coop., Inc.,* 858 F.2d 1210, 1217 (7th Cir. 1988); *Illinois v. Interstate Commerce Comm'n*, 713 F.2d 305, 309 (7th Cir. 1983)).

Under the Eleventh Amendment, state officials sued in their official capacities are also immune from lawsuits seeking money damages. *Joseph v. Bd. of Regents of the Univ. of Wis. Sys.*, 432 F.3d 746, 748 (7th Cir. 2005). Because the State of Illinois and its agencies, including the Illinois Department of Revenue, have not waived their Eleventh Amendment protections and Congress has not abrogated those protections, Amtrak's constitutional claims against Hamer in his official capacity must fail. *See Knox v. McGinnis*, 998 F.2d 1405, 1412 (7th Cir. 1993). Amtrak's attempt to circumvent the Eleventh Amendment by invoking the *Ex Parte Young* doctrine fails because that doctrine only applies where a plaintiff is seeking prospective equitable relief for ongoing violations of federal law. *See Peirick*, 510 F.3d at 695 (citing *Ex Parte Young*, 209 U.S. 123, 159-60, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). Here, Amtrak seeks money damages. The Court therefore grants Defendant's motion to dismiss Count IV against Hamer in his official capacity with prejudice.

Amtrak's claim against Hamer in his individual capacity also fails to state a claim upon which relief can be granted. In Count IV, Amtrak seeks repayment of sums paid to the State. Amtrak completely fails, however, to state a cognizable legal basis for its claim. Amtrak makes general conclusory assertions that Hamer acted "in direct violation of federal and state law" but provides neither a factual nor a legal basis to support that claim. *See* Compl. ¶¶ 93-95. Again, for the purposes of a Rule 12(b)(6) motion, the Court must consider whether Amtrak "give[s] the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly,* 550 U.S. at 555 (internal quotation omitted). Here, Amtrak does not. The Court grants Defendants'

motion to dismiss Count IV as to the gas use tax against Hamer in his individual capacity without prejudice.

## IV. Count VI – Repayment of Taxes Paid (Against City of Chicago and City Department of Revenue Director Reyna-Hickey)

The Court already determined that the City of Chicago Municipal Tax does not run afoul of Amtrak's Federal Exemption. Furthermore, Amtrak's assertion in Count VI that the City of Chicago "allow[s] Peoples Gas to impose an additional charge or fee on Amtrak for Municipal Tax" is directly contradicted by its factual allegations, *see* Compl. ¶ 67, which set forth that Section 5/9-221 of the Illinois Public Utilities Act provides that authorization. Thus, Amtrak has no basis on which to state a claim against the City Defendants to recover the sums Peoples Gas collected and allegedly remitted in connection with the Chicago Municipal Tax. The Court grants Defendant's motion to dismiss Count VI with prejudice.

## V. Count VII – Damages Under the Public Utilities Act (Against Peoples Gas)

Defendant moves to dismiss Count VII for failure to state a claim under Section 5-201 because Amtrak alleges that Peoples Gas violated *federal* law, *see* Compl. ¶ 110, and liability under Section 5-201 is only triggered upon violations of "[the Public Utilities] Act, or any rule, regulation, order or decision of the [Illinois Commerce] Commission." 220 ILCS 5/5-201. "[B]y the plain language of the statute only violations of the Act or of ICC rules implementing the Act are actionable." *Barthel v. Illinois Cent. Gulf R.R. Co.*, 74 Ill.2d 213, 219, 384 N.E.2d 323 (1978).[5]

---

[5] In that case, the Illinois Supreme Court explicitly rejected plaintiffs' argument that Act should be read to encompass <u>any</u> claim that the public utility's actions were "unlawful." *Barthel*, 74 Ill.2d at 219.

In its response brief, Amtrak attempts to revise its claim. *See* R. 40, Resp. in Opposition to Mot. to Dismiss, at 16. Amtrak argues that its assertion that Peoples Gas violated federal law does in fact support a claim under 220 ILCS 5/5-201 because the alleged federal law violation would violate *another* provision in the Public Utilities Act, and would thus trigger liability under Section 5-201. The other provision, Section 9-101, states that "[e]very unjust or unreasonable charge made, demanded or received for such product or commodity or service is hereby prohibited and declared unlawful." Amtrak argues that in collecting the "gas use tax and the Additional Charges" from Amtrak, Peoples Gas imposed "unjust" and "unreasonable" charges in violation of Section 9-101. In so doing, Amtrak submits, Peoples Gas violated Section 5-201 of the Public Utilities Act.

As an initial matter, Amtrak makes no mention of the gas use tax in Count VII. In Count VII, Amtrak claims only that "Peoples Gas's collection from Amtrak of State Gas Revenue Tax, Municipal Tax and Public Utility Fund Tax under the Illinois Public Utilities Act is expressly prohibited by federal law and therefore unlawful." (Compl. ¶ 110.) Since the Federal Exemption Statute does not apply to the Additional Charges, Peoples Gas did not violate federal law in imposing those charges and Amtrak's claim fails. Even if Amtrak had, as it argues in its response brief, included the gas use tax in Count VII, Amtrak's claim would still fail. The Illinois legislature – not Peoples Gas – imposed the gas use tax on Amtrak. (*Id*. at ¶ 22.) In accordance with the Gas Use Tax Law, 35 ILCS 173/5-15, Peoples Gas collected that tax from Amtrak and remitted it to the Department. (*Id*. at ¶ 23.) The statute requires purchasers who do not self-assess to pay their gas use tax directly to their delivering supplier, who then remits the sums to the Department. (*Id*. at ¶¶ 24, 127.) Peoples Gas neither "makes," "demands," nor

"receives" the gas use tax -- as Amtrak itself states, "[t]he delivering supplier is ... only a conduit for the gas user to remit Gas Use Tax to the Department." (*Id.* at ¶ 128.)  For all of these reasons, the Court grants Defendant's motion to dismiss Count VII with prejudice.

**VI.  Counts IX & X – Equal Protection and Due Process Violations (Against State Defendant Hamer in his Official Capacity)**

In Count IX, which Amtrak brings against Hamer in his official capacity, Amtrak claims that the Gas Use Tax Law violates the Equal Protection Clause, the Commerce Clause, and 42 U.S.C. § 1983.[6]  Amtrak alleges that the Gas Use Tax Law discriminates against non-self-assessing taxpayers who purchase out-of-state gas by taxing them at a higher rate than both self-assessing purchasers of out-of-state gas and purchasers of in-state gas.  (Compl. ¶¶ 121, 122.) Defendant asks the Court to deny the claim as moot because the Department does not, and has not since October 2008, levied the tax on Amtrak.  Defendant also argues that Amtrak lacks standing to bring the claim because its federal exemption from the tax precludes it from being "similarly situated" with other gas purchasers who have to pay the tax.

Both parties agree that the Federal Exemption Statute exempts Amtrak from paying the gas use tax and, furthermore, that the Department stopped levying the gas use tax on Amtrak in October 2008.  It is axiomatic that Amtrak only has standing to assert a constitutional claim if: (1) it has suffered an injury in fact, which is both "concrete and particularized" and "actual or

---

[6] Amtrak appears to bring a freestanding claim that the gas use tax law violates 42 U.S.C. 1983.  Because Section 1983 provides a mechanism for enforcing rights secured by the Constitution and laws of the United States, an individual "cannot go into court and claim a violation of § 1983 - for § 1983 by itself does not protect anyone against anything." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002) (citation and internal quotations omitted); *see also McCready v. White*, 417 F.3d 700, 703 (7th Cir. 2005) (Section 1983 provides a remedy only for the violation of "rights, privileges, or immunities secured by the Constitution and laws" of the United States).

imminent, not conjectural or hypothetical"; (2) there is a causal connection between the injury and the conduct complained of, meaning the injury has to be fairly traceable to the challenged action of the defendant; and (3) it is likely, not merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Because the Department no longer assesses the gas use tax on Amtrak, there is no injury for the Court to redress. In addition, as previously discussed, for a claim to succeed against a state official, the plaintiff must be "seeking prospective equitable relief for ongoing violations of federal law." *Peirick*, 510 F.3d at 695; *see also Ex parte Young*, 209 U.S. at 159-60. Amtrak is not suffering from an "ongoing violation of federal law" because, in accordance with the law, it is not subject to the gas use tax. *Id*. The Court grants Defendant's motion to dismiss Count IX with prejudice.

In Count X, Amtrak claims that the Department's system for allowing non-self-assessing purchasers to seek refunds of their gas use tax payments violates those purchasers' procedural due process rights. Amtrak alleges that non-self-assessing purchasers – i.e., those who elect not to register as self-assessing and are thus required by law to pay the gas use tax to their gas supplier, who remits the payment to the Department – have no means by which to seek refunds directly from the Department. Instead, Amtrak alleges that Illinois law allows the supplier (in this case, Peoples Gas) and not the purchaser, to file a refund claim with the Department. (Compl. ¶ 43.) Amtrak claims that this amounts to an "absence of any pre-deprivation or post-deprivation remedies for the unlawful collection or overpayment [of] taxes under the Gas Use Tax Law" which violates the Due Process Clause. (*Id*. at ¶ 130.) Despite Amtrak's allegation

that "[a]n actual controversy exists between Amtrak and the Department," *see id*., Defendant argues that the claim is moot, and that Amtrak lacks standing to bring the claim.

To state a Fourteenth Amendment claim for the deprivation of a property interest without due process, a plaintiff must demonstrate that (1) he had a constitutionally protected property interest, (2) he suffered a loss of that interest amounting to a deprivation, and (3) the deprivation occurred without due process of law. *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 943-44 (7th Cir. 2010) (citing *Moss v. Martin*, 473 F.3d 694 (7th Cir.2007)). "Where state law remedies exist, a plaintiff must either avail herself of the remedies guaranteed by state law or demonstrate that the available remedies are inadequate." *Leavell v. Illinois Dep't of Natural Resources*, 600 F.3d 798, 802 (7th Cir. 2010) (quoting *Doherty v. City of Chicago*, 75 F.3d 318, 323 (7th Cir.1996)). There is no requirement that a plaintiff exhaust state remedies, but "this does not change the fact that no due process violation has occurred when adequate state remedies exist." *Id*. (quoting *Veterans Legal Def. Fund v. Schwartz*, 330 F.3d 937, 941 (7th Cir. 2003)).

Amtrak's claim fails for several reasons. First, Amtrak has not demonstrated that the ability to request a gas use tax refund directly from the Department constitutes a "constitutionally protected property interest." *LaBella*, 628 F.3d at 944. Amtrak does not allege that it has no means by which to seek a gas use tax refund – rather, the mechanism it describes requires it to seek assistance from Peoples Gas. Amtrak's factual allegations demonstrate that it has availed itself of that option, albeit not to Amtrak's complete satisfaction. Amtrak's factual allegations in that regard belie its claim that "Illinois law does not allow for gas users to protest or otherwise claim a refund of Gas Use Taxes paid to their Illinois gas supplier." (Compl. ¶ 130.) Furthermore, Section 9-252 of the Public Utilities Act grants the Commission original

jurisdiction to hear complaints about unlawful or excessive rates and charges, and provides the complainant recourse in the event that the utility does not comply with the Commission's order. *See* 220 ILCS 5/9-252. Amtrak does not allege that it has availed itself of this potential statutory remedy, nor does it demonstrate that this remedy is inadequate. *Leavell*, 600 F.3d at 802. For these reasons, the Court grants Defendant's motion to dismiss Count X without prejudice.

## VII. Counts VIII & XI – State Law Claims (Against the IL Department of Revenue)

Federal courts have jurisdiction over all cases involving Amtrak, regardless of the cause of action. 49 U.S.C. 24301(c); *Miller v. Illinois Cent. R. Co.*, 474 F.3d 951, 952 (7th Cir. 2007) (citing *Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 758 n. 1 (7th Cir. 2003)). Thus, even if the Court had dismissed all of Amtrak's federal claims, it would still have jurisdiction to adjudicate Amtrak's state law claims.

In Count VIII, Amtrak alleges that the Department "intentionally and recklessly disregarded Amtrak's Federal Tax Exemption from state taxes, fees and charges by assessing and collecting or allowing Peoples Gas to assess and collect Illinois taxes, fees and charges." (Compl. ¶ 114.) Amtrak alleges that the Department's actions violated the Taxpayers' Bill of Rights Act, 20 ILCS 2520/1 *et seq*. That statute, however, provides a private right of action to Illinois taxpayers only if the Department "intentionally or recklessly disregards tax laws or regulations in collecting taxes." 20 ILCS 2520/5. The Department argues, and Amtrak concedes, that the "tax laws or regulations" identified in the Act refer to Illinois tax laws and regulations, not federal tax laws. *See* R. 33, State Defs.' Joint Mot. to Dismiss, at 12. In response, Amtrak first asserts that its allegations involve a disregard of the Gas Use Tax Law – not the Federal Tax Exemption. (R. 42, Pl.'s Resp., at 8.) Amtrak's Complaint, however,

explicitly states that the Department "intentionally and recklessly disregarded Amtrak's *Federal Tax Exemption*." (Compl. ¶ 114, emphasis added.) In the alternative, Amtrak argues that because the Gas Use Tax Law prohibits the Department from levying the gas use tax on a taxpayer who is exempt under federal law, *see* Compl. ¶ 26, its allegation that the Department intentionally and recklessly disregarded Illinois law (i.e. the Gas Use Tax Act) is technically sufficient to trigger a violation of the Taxpayers' Bill of Rights Act. Because Amtrak does not allege this theory of the claim in its Complaint, the Court grants Defendant's motion to dismiss Count VIII without prejudice.

Finally, in Count XI, Amtrak seeks a declaration that Hamer, in his official capacity, has violated the Uniformity Clause of the Illinois Constitution because the Department imposes the Gas Use Tax Law and the Gas Revenue Tax Act in a manner that subjects different taxpayers to different tax rates. Amtrak lacks standing to bring this claim. As Amtrak concedes, it is not subject to the gas use tax. Thus, it has no standing to bring a declaratory action involving the Gas Use Tax Law. Nor is Amtrak subject to the Gas Revenue Tax – as previously discussed, the Department levies that tax on Peoples Gas, not Amtrak. Thus, Amtrak does not have standing to bring Count XI. Defendant's motion to dismiss Count XI is granted with prejudice.

## CONCLUSION

For the reasons discussed above, the Court grants Defendants' motions to dismiss Counts I, II, V, VI, VII, IX, and XI with prejudice. The Court grants Defendant's motion to dismiss Count III with prejudice as to the Additional Charges, and without prejudice as to the gas use tax. The Court grants Defendant's motion to dismiss Count IV as follows: (i) against Hamer in his official capacity with prejudice, (ii) against Hamer in his individual capacity as to the State

Gas Revenue Tax with prejudice, and (iii) against Hamer in his individual capacity as to the gas use tax without prejudice. The Court grants Defendants' motion to dismiss Counts VIII and X without prejudice. If Plaintiff wishes to proceed with the litigation, it must file an amended complaint no later than March 24, 2011, consistent with the Court's opinion.

**Date:** March 3, 2011

**ENTERED**

**AMY J. ST. EVE**
**United States District Court Judge**